# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| v. | : | CRIMINAL NO. 23-CR-439 |
| NIKOLAI LUKAS<br>    a/k/a "JL2" | : | |

## GOVERNMENT'S MOTION FOR STAY OF THE MAGISTRATE JUDGE'S ORDER RELEASING THE DEFENDANT AND FOR DETENTION PENDING TRIAL

The defendant, Nikolai Lukas, helped orchestrate a massive dark web narcotics operation that shipped hundreds of pounds of methamphetamine to buyers across the country, including buyers in the Eastern District of Pennsylvania. This drug trafficking group was built on stealth and deception that made it almost impossible to track or detect. On the two occasions that law enforcement discovered stash house locations used by the drug trafficking group, they found weapons, large amounts of drugs, and drug proceeds, including an assault rifle, silencer, over $400,000, 18 kilograms of methamphetamine and handguns. One of the defendant's co-conspirators lived at one of these stash houses, and the defendant was surveilled there by law enforcement.

As a result of his actions, a federal grand jury sitting in the Eastern District of Pennsylvania returned a one-count indictment, charging the defendant with conspiracy to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance with a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 846, 841(a)(1), (b)(1)(A). A warrant was issued for his arrest, and on November 29, 2023, he was arrested on the charges from this district in the Southern District of California, where he resides.

He was brought before a federal magistrate judge for an initial appearance and detention hearing on November 30, 2023. The presiding magistrate judge, following argument by counsel, signed an order for release with conditions of bail to be posted in California, including the posting of a mostly unsecured $20,000 bond. The government now presents this appeal and asks this Court to stay the magistrate's order granting the defendant's release.

The United States of America, through its attorneys, Jacqueline C. Romero, United States Attorney, and Jason D. Grenell and Timothy M. Stengel, Assistant United States Attorneys, respectfully moves for a stay of the magistrate's order releasing the defendant and for detention of the defendant pending trial in this district. The standard of review for the present motion is *de novo*, under *United States v. Delker*, 757 F.2d 1390 (1985),[1] *cited and followed in United States v. Cirillo*, 1999 WL 1456536 (3d Cir. 1999). *Accord, United States v. Thibodeaux*, 663 F.2d 520 (5th Cir. 1981) (district court's responsibility to reconsider conditions of release fixed by another judicial officer is unfettered as if it were considering whether to amend its own action, and district court need not look for abuse of discretion or defer to judgment of prior judicial officer); *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (en banc) (same rule applies where the defendant challenges detention order). This Court may consider all the evidence adduced below as well as other evidence the parties may supply.

The defendant is facing a maximum penalty of life imprisonment and a mandatory minimum of ten years imprisonment. Accordingly, the Bail Reform Act creates a presumption that no condition or combination of conditions will reasonably assure the defendant's appearance

---

[1] There is imposed "a responsibility on the district court to reconsider the conditions of release fixed by another judicial officer . . . as unfettered as it would be if the district court were considering whether to amend its own action. It is not constrained to look for abuse of discretion or to defer to the judgment of the prior judicial officer." *Delker* at 1394.

as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). The defendant is unable to rebut the statutory presumption and accordingly, he should be detained. There is no condition or combination of conditions that will reasonably assure the defendant's appearance as required and/or the safety of the community, and the Government moves pursuant to 18 U.S.C. § 3142(e) and (f) for a detention hearing and pretrial detention of the defendant. As such, the government respectfully requests that this Court, pursuant to 18 U.S.C. § 3145, stay the magistrate's order releasing the defendant, and order that the defendant be detained through his transport to this district and pending resolution of the government's instant motion for detention pending trial.

I.  **THE FACTS**

In support of this motion, the government makes the following representations and proposed findings of fact:

   A.  **The Evidence In This Case**

The evidence in this case is strong. Beginning in early 2020, Homeland Security Investigations (hereinafter "HSI") began investigating a prolific dark web seller of methamphetamine identified as "Shardnazi." The way the operation worked was that Shardnazi would place ads on the dark web at various online markets for various drugs. He sold cocaine, mushrooms, and methamphetamine but could obtain almost any illegal drug. Shardnazi's main business, however, was methamphetamine. This defendant, also known by his online moniker, "Jl2," served as a sort of coordinator for the operation, that is, he communicated with customers, including ones in the Philadelphia area, and he partnered with the group's supplier to manage the fulfillment of any orders, that is, he obtained the drugs from the supplier and arranged for them to be shipped via the United States Postal Service (USPS).

Eventually HSI began making controlled purchases from the organization. On February 22, 2021, HSI placed two 1/4-pound orders and one 14-gram order of methamphetamine directed to law enforcement-controlled addresses in the Eastern District of Pennsylvania and the District of Minnesota. HSI received USPS tracking information from the defendant, using the online identity JL2. HSI monitored the parcels until they were seized. HSI processed the three USPS parcels, which contained a total of approximately 3/4 of a pound of a crystalline substance that field tested positive for methamphetamine. Lab results later confirmed that it was pure methamphetamine. The return address for the packages appeared to be fictional and not associated with JL2.

On March 18, 2021, HSI conducted a second undercover purchase of methamphetamine. The order consisted of one 1/4-pound of methamphetamine to be sent to an undercover address in Pennsylvania, and one 1/4-pound of methamphetamine to be sent to an undercover address in Texas. HSI was again provided with USPS tracking information from JL2 and law enforcement monitored the parcels until their final destination and seizure. HSI processed the two USPS parcels, which contained a total of approximately 0.50 pounds of a crystalline substance that field tested positive for methamphetamine. The lab has since confirmed that it was almost 100 percent pure methamphetamine.

On April 1, 2021, information was requested from Coinbase requesting account holder information for the above transactions involving JL2. Coinbase responded, identifying the account holder of the Bitcoin wallet where HSI was sending payment as an individual identified as the supplier of the organization.

HSI received information that on August 13, 2020, a search warrant was executed at the residence of the supplier in Chula Vista, California. The search warrant resulted in the recovery

of various illegal narcotics including approximately 11 kilograms of methamphetamine. Additionally, a rifle equipped with a silencer, a pill press machine, electronic items, and $486,410 in U.S. currency was recovered. This address was the residence of the supplier but was also used by the supplier and the defendant to package and process methamphetamine orders. The defendant would also conduct narcotics transactions on the dark web while at this residence.

On July 16, 2021, HSI and DEA received a local warrant to search the compound where the supplier and the defendant had been surveilled during the course of the investigation. When they searched the compound, they found the supplier, as well as approximately 7 kilograms of methamphetamine. They also found a Springfield Armory Model 1911 handgun, 9mm semi-automatic pistol, bearing serial number N452032, loaded with fourteen rounds of live ammunition, along with five magazines and two boxes of ammunition. Additionally, there were large amounts of mushrooms and marijuana. This was the supplier's residence, but based on their investigation, including surveillance and witness information, investigators believe that this defendant had been at this property within days of the search.

### B. Potential Flight Risk

The defendant poses a significant flight risk. The defendant is a United States citizen, but he resides just miles from the Mexican border, and based on the investigation, the government believes that the defendant has significant resources to fund an escape as well as connections to Mexican drug cartels. Additionally, the defendant faces a mandatory minimum of ten years' incarceration in this case with guidelines far exceeding that number. If released, the defendant would easily be able to cross the border and evade prosecution. Given that he faces a ten-year mandatory minimum in a jurisdiction hundreds of miles from his home, he has little incentive to

appear in Philadelphia on his own recognizance. Additionally, he has no ties to the Eastern District of Pennsylvania other than shipping drugs to this part of the country.

One of the most attractive aspects of selling drugs on the dark web is anonymity. Vendors and suppliers are difficult to identify. They use sophisticated software and encrypted emails making forensic analysis all but impossible. This defendant was doing everything he could to obfuscate his true identity to prevent apprehension. Given the lengths that he went to hide who he was and how his operation worked, he can give this Court little assurance that he will now abide by the conditions of pretrial release or appear at any future hearing.

### C. **Danger to the Community**

The defendant presents a serious threat to the safety of the community. Not only is the defendant responsible for the distribution of hundreds of pounds of methamphetamine across the country but other members of his drug trafficking group possessed loaded firearms, including an assault rifle, ready to be used to protect their drug organization.

### D. **Lack of Community Ties**

The defendant does not appear to have any ties to the Eastern District of Pennsylvania aside from his criminal activity. Given that the defendant was distributing bulk amounts of methamphetamine all over the country, and given the presence of large amounts of cash at locations searched by law enforcement in this case, the government believes that the defendant has access to large sums of illegal money, which could help him flee if he is released pending transport to the Eastern District of Pennsylvania to face these charges.

### E. **Maximum Penalties**

The defendant is charged in a one-count indictment, with conspiracy to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance with a

detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 846, 841(a)(1), (b)(1)(A). The defendant is therefore facing a maximum penalty of life imprisonment and a mandatory minimum of ten years imprisonment, giving him a significant incentive to flee.

### F. Rebuttable Presumption

As there is probable cause to believe that the defendant committed an offense punishable by 10 or more years in prison under the Controlled Substances Act, there exists a rebuttable presumption that no condition of release, or combination of conditions, will reasonably assure the appearance of the defendant as required and the safety of the community. The defendant cannot rebut this presumption, nor is the government aware of any credible evidence put forth by the defendant to try to rebut it.[2]

## II. CONCLUSION

Nothing short of incarceration can ensure the appearance of this defendant and the safety of the community. In sum and as detailed above, the weight of the evidence against the defendant is substantial and presents a strong likelihood of conviction. He is a large-scale drug trafficker with no ties to this community, access to an alarming amount of controlled substances, which he

---

[2] To overcome the statutory presumption in favor of detention, a defendant must present "credible evidence" at his detention hearing that he will appear as required and that he will not pose a risk of danger to the community upon release. *See United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (per curiam). Once the defendant has made the requisite showing, "the burden then shifts back to the government either to prove by a preponderance of the evidence that he is a risk of flight, or to prove by clear and convincing evidence that he poses a danger to the safety of the community." *United States v. Mastrangelo*, 890 F. Supp. 431, 436 (E.D. Pa. 1995) (citing *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986)). But even if the defendant is able to present such credible evidence, the presumption does not vanish. *Mastrangelo*, 890 F. Supp. at 436 (citation omitted). Rather, it "remains available to be considered by the court in determining whether to release or detain the defendant." *Id*.

has distributed to this community and others across the country, and potential access to firearms. He also has access to large amounts of cash representing both the proceeds of his illegal activities and a means of fleeing this jurisdiction. These factors combined with the evidence against him, the ten-year mandatory minimum sentence and the significantly higher Guideline sentence he faces if convicted clearly establish his danger to the community and risk of flight. In short, the conditions imposed by the Magistrate are not sufficient to reasonably assure the safety of the community and hold the defendant to his obligation to travel to and appear before this Court.

WHEREFORE, for all the reasons stated above, the government respectfully requests that this court stay the Magistrate's Order releasing defendant on bail conditions, and grant the government's Motion for Detention pending transport to and trial in the Eastern District of Pennsylvania.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

__s/ Jason D. Grenell_____
JASON D. GRENELL
TIMOTHY M. STENGEL
Assistant United States Attorneys

Dated: November 29, 2022

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 23-439 |
| NIKOLAI LUKAS<br>a/k/a "JL2" | : | |

## ORDER

AND NOW, this _____ day of _____ 2023, it is ORDERED that the pre-trial release order issued by the United States Magistrate Judge of the United States District Court for the Southern District of California, releasing the defendant in this case, is hereby **STAYED**. It is further ORDERED that defendant shall be **DETAINED** until this Court can hear the appeal of the government with respect to its motion for detention. It is further ORDERED that a hearing will be scheduled upon the defendant's transport to the Eastern District of Pennsylvania.

BY THE COURT:

_____
HONORABLE GENE E.K. PRATTER
*Judge, United States District Court*

# CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention and Proposed Order was served by electronic mail, on defense counsel in the Southern District of California.

*s/ Timothy M. Stengel*
JASON D. GRENELL
TIMOTHY M. STENGEL
Assistant United States Attorneys

Date:   December 1, 2023